RECORD NO. 17-1429

IN THE

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

**In re: Highland Construction Management Services, LP,**

*Debtor*

_____

# HIGHLAND CONSTRUCTION MANAGEMENT SERVICES, LP,

*Plaintiff-Appellant*,

v.

# WELLS FARGO BANK, N.A., f/b/o JEROME GUYANT IRA,

*Defendant-Appellee*.

_____

### BRIEF OF DEFENDANT–APPELLEE
_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

**Neil D. Goldman**
**Goldman & Van Beek, P.C.**
**510 King Street, Suite 416**
**Alexandria, Virginia 22314**
**(703) 684-3260**
**ngoldman@goldmanvanbeek.com**

**Counsel for Appellee Wells Fargo Bank, N.A. f/b/o Jerome Guyant IRA**

# TABLE OF CONTENTS

## Contents

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF ISSUES PRESENTED ...................................................... 1

STANDARD OF APPELLATE REVIEW ...................................................... 2

STATEMENT OF THE CASE ....................................................................... 2

STATEMENT OF FACTS ............................................................................. 5

ARGUMENT ............................................................................................... 17

I.  Highland's Claim For Recharacterization Of Debt As Equity Is Barred By The Doctrines Of Res Judicata And Collateral Estoppel Where There Have Been Two (2) Prior State Court Proceedings, And Three (3) Prior Bankruptcy Court Proceedings Arising From The Same Transaction And Core Set Of Facts, All Of Which Have Been Fully and Finally Resolved Against Highland .................... 17

II.  The Equitable Doctrine Of Recharacterization Is Nowhere Found In The Bankruptcy Code, And Is Not Peculiarly a Bankruptcy Cause of Action.  It is an Equitable Claim That Has Been Recognized by the Virginia Court of Appeals, As Well as Other State and Federal Courts in Non-Bankruptcy Contexts. ................................................................ 21

III.  Even Assuming That Recharacterization Were Peculiarly A Bankruptcy Cause Of Action, The Claim For Recharacterization Made In This Adversary Proceeding Case Is Barred By The Doctrine Of Res Judicata Where It Was Not Raised In Three (3) Prior Bankruptcy Proceedings, Including Two (2) Adversary Proceedings, All Of Which Arose From The Same Transaction And Core Set Of Facts, And All Of Which Were Fully And Finally Resolved In Favor Of The Guyant IRA.  There Is No Reason or Basis for Certifying the Question to the Virginia Supreme Court Because The Issue of Whether Virginia Recognizes a State Law Cause of Action For Recharacterizaion is Moot. ................................................................ 24

CONCLUSION ............................................................................................ 27

CERTIFICATE OF SERVICE ..................................................................... 27

CERTIFICATE OF BAR MEMBERSHIP ................................................... 29

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ............................ 29

CERTIFICATE OF IDENTICALNESS ....................................................... 29

CERTIFICATE OF VIRUS SCAN .............................................................. 29

# TABLE OF AUTHORITIES

## Cases

Bosserman v. Bosserman, 9 Va. App. 1, 384 S.E. 2d 104, 110 (Va. Ct. App. 1989) ..............................................................................22, 23, 26

Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995) .....................25

Dealer Servs. Corp. v. Am. Auto Auction, 2013 Conn. Super. LEXIS 1103 **35-41 ...........................................................................................23

Decker v. Wash. Mut. Bank, N.A. (In re Decker), 357 B.R. 825, 833-834 (Bankr. D. Mont. 2007)................................................................19, 25

Estate of Mixon v. United States, 464 F.2d 394, 401-403 (5th Cir. 1972).............23

Gariety v. Vorono, 261 F. App'x 456, 462 (4th Cir. 2008).......................2

Highland Construction Management Service, LP v Wells Fargo Bank N.A. jbo Jerome Guyant IRA, Adv. Proc. 13-1289-RGM ..........................16

Highland Construction Management Services, LP v. Wells Fargo Bank NA f/b/o Jerome Guyant IRA, Adv. Proc. 13-1055 ................................15

Highland Construction Management Services, L.P. v. Guyant, Case No. CL61556 .........................................................................................7, 10

Highland Construction Management Services, LP v. Wells Fargo F/B/O Jerome Guyant IRA, 2017 U.S. Dist. LEXIS 39848 (E. D. Va. March 20, 2017) ................................................................................................5

Idaho Development v. Teton View Golf Est., 152 Idaho 401, 272 P. 3d 373 (2011).............................................................................................23

In re Arthur's Indus. Maintenance, 1992 Bankr. LEXIS 2339 (Bankr. W.D. Va. 1992) .............................................................................................25

In Re Dornier Aviation (North America), Incorporated, 453 F. 3d 225, 231 (4th Cir. 2006) ......................................................................................22

In re Highland Construction Management Services, LP v. Wells Fargo Bank, NA for the use and benefit of Jerome Guyant IRA, 53 Fed. Appx. 217 (2014)3, 25

In re Highland Construction Management Services, LP, Case No. 11-11413-RGM .................................................................................................2

In re Mader's Store for Men, Inc., 77 Wis. 2d 578, 604-606, 254 N.W.2d 171 (Wis. 1977) ........................................................................................24

In re Professional Coatings Inc., 210 B.R. 66, 74 (Bankr. E.D. Va. 1997)..........18

In re Professional Coatings Inc., 210 B.R. 66, 74 (Bankr. E.D. Va. 1997) .........18

In re Sawyer, 2008 Bankr. Lexis 2065, *7 (Bankr. E.D. Va. 2008); Davis v.
    Marshall Homes, Inc., 265 Va. 159, 164, 576 S.E.2d 504 (2003) .....................17

Interthem v. Olympic Homes Systems, Inc., 569 S.W.2d 467, 471-474 (Tenn.
    Ct. App. 1978)...................................................................................................24

Migra v. Warren City School Dist. Bd. Of Educ., 465 U.S. 75, 81-85 (1984) ...18

Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008) ...........................................21

Parkside Vill. LLC v. United Bank, 2010 U.S. Dist. LEXIS 56570 (W.D. Va.
    2010), ................................................................................................................21

Raley v. Haider, 286 Va. 164, 170 (2013)747 SE2d 812 .....................................18

Rawlings v. Lopez, 267 Va. 4, 591 S.E.2d 691 (2004) ..........................................20

Seale & Assocs. v. Vector Aero Corp., 2010 U.S. Dist. Lexis 129748, *9
    (E.D. Va. 2010) (under Rule 1:6 .......................................................................18

State Farm Mut. Automobile Ins. Co. v. Wright, 173 Va. 261, 3 S.E.2d 187
    (1939)................................................................................................................20

Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006) ....................................21

Tanzi v. Fiberglass Swimming Pools, 414 A.2d 484, 489-490 (R.I. 1980) ...........24

TIFD III-E, Inc. v. United States, 459 F.3d 220, 232-233 (2nd Cir. 2006).............23

Townes v. Jarvis, 577 F.3d 543, 544-545 (4th Cir. 2009).....................................26

United States v. Smith, 395 F.3d 516, 518-19 (4th Cir. 2005)...............................21

Wells Fargo Bank, N.A. f/b/o Jerome Guyant IRA v. Highland Construction
    Management Services, LP, et al, Case No. 60287.................................................6

Yankee Microwave, Inc. v. Petricca Communications Sys., 53 Mass. App. Ct.
    497, 522-523, 760 N.E.2d 739 (2002)...............................................................23

## Statutes

11 U.S.C. §105 ........................................................................................................21

Va. Code § 8.01-422 ...............................................................................................22

## Other Authorities

10-7018 Collier on Bankruptcy (Sixteenth Edition) P 7018.01 .............................25

## Rules

Fed. R. Bankr. P 3007 .............................................................................................25

Fed. R. Bankr. P. 7001 ............................................................................................25

Va. Sup. Ct. R. 1:6 ..................................................................................................18

## JURISDICTIONAL STATEMENT

Appellee concurs with the Jurisdictional Statement of the Appellant, which appears on page 1 of the Appellant's Brief.

## STATEMENT OF ISSUES PRESENTED

1.     Whether Highland's claim for recharacterization of debt as equity is barred by the doctrines of *res judicata* and collateral estoppel where there have been two (2) prior state court proceedings, and three (3) prior bankruptcy court proceedings arising from the same transaction and core set of facts, all of which have been fully and finally resolved against Highland.

2.     Whether the equitable doctrine of recharacterization, which is nowhere found in the Bankruptcy Code, is peculiarly a bankruptcy cause of action that can only be raised in a bankruptcy court.

3.     Even assuming that recharacterization were peculiarly a bankruptcy cause of action, whether the claim for recharacterization made in this adversary proceeding case is barred by the doctrine of *res judicata* where it was not raised in three (3) prior bankruptcy matters, including two (2) adversary proceedings, all of which arose from the same transaction and core set of facts, and all of which were fully and finally resolved in favor of the Guyant IRA.

## STANDARD OF APPELLATE REVIEW

Appellee Wells Fargo, N.A. f/b/o Jerome Guyant IRA (the "Guyant IRA") agrees that this Court's review of the grant of summary judgment to the Guyant IRA by the Bankruptcy Court in the underlying adversary proceeding, Case No. 15-01030, as affirmed by the District Court, is <u>de novo</u>.

This Court should review the decision of the District Court not to certify a question to the Virginia Supreme Court for abuse of discretion.  <u>Gariety v. Vorono</u>, 261 F. App'x 456, 462 (4th Cir. 2008).

## STATEMENT OF THE CASE

Appellant Highland Construction Management Services, LP ("Debtor" or "Highland") filed a voluntary petition for Chapter 11 bankruptcy relief on February 28, 2011 in the Bankruptcy Court for the Eastern District of Virginia, Alexandria Division.  <u>In re Highland Construction Management Services, LP</u>, Case No. 11-11413-RGM.

The dispute in this case, as well as in two (2) prior state court proceedings and three (3) other prior separate proceedings in the Bankruptcy Court, all of which were fully and finally decided in favor of the Guyant IRA, arises from the Debtor's repeated challenges to the secured claim of the Guyant IRA under a Note which is the subject of a judgment for One Million Three Hundred Ninety-Six

2

Thousand Six Hundred Fifty-Seven Dollars and Fifty-Two Cents ($1,396,657.52), and a declaratory judgment stating that the Guyant IRA has a perfected security interest in certain assets of the Debtor.  This adversary proceeding is yet another challenge to those judgments. They were the subject of the disposition of a challenge to the Guyant IRA's secured status which was rejected by the Bankruptcy Court, and affirmed by the District Court and this Court,[1] as well as two (2) prior adversary proceedings arising from the same transaction as to which final judgments were entered in favor of the Guyant IRA, and as to which the time for appeal has expired.

This adversary proceeding was commenced by the filing of a Complaint on February 12, 2015  (JA 32-47), which sought: in Count I, recharacterization of the debt due The Guyant IRA, which had been reduced to a judgment in the Circuit Court of Loudoun County, Virginia, as equity in the entity known as Ashbury Hillside, LLC ("Ashbury"); in Count II, Equitable Subordination of the Debt to claims of unsecured creditors; and in Count III, determination of an alleged credit due to Highland.

The Guyant IRA filed a Motion for Summary Judgment (JA 57-256) asserting that the claims in this adversary proceeding were barred by the doctrines

---

[1] In re Highland Construction Management Services, LP v. Wells Fargo Bank, NA for the use and benefit of Jerome Guyant IRA, 53 Fed. Appx. 217 (4th Cir. 2014)(JA 320-321)

of res judicata (claim preclusion) and collateral estoppel (issue preclusion).  By Order entered October 25, 2016 (JA 304-306), the Bankruptcy Court granted the Guyant IRA's Motion for Summary Judgment with respect to Counts I and III, and denied the Motion as to Count II.  The parties later agreed to a dismissal of Count II, without prejudice, conditioning the refiling of Count II upon a reversal of the grant of Summary Judgment as to Count I.  This is reflected in an Order entered November 14, 2016. (JA 442-444).  Highland challenged the grant of Summary Judgment as to Count III in its appeal to the District Court, but has not raised it as an issue in this Court.

In his decision from the bench granting summary judgment, Judge Mayer of the Bankruptcy Court stated (JA 417-419):

> It's res judicata. It's res judicata in the first because it arises in the first [state court] case because its the identity of interest between Guyant and the IRA.[2]
>
> If you don't use res judicata, you can certainly use collateral estoppel, and that facts that were found in the first one are applicable in this case as well.
>
> But you also have the second [state court] case, Judge Chamblin reads – making the same findings in a case in which Guyant is individually a party, so that would also be res judicata.
>
> So its res judicata against both of them that you have.
>
> Now that being said, the first claim, Count I here, is to recharacterize, and I think that you are splitting causes of action to bring it in this case.

---

[2] Highland alleged in its Complaint that "there is an identity of interest between the IRA and Guyant." (JA 33, ¶4).

Yes, it is brought in a bankruptcy case to figure out who gets paid first, second and last, and that is the place you are most likely to find it. But when you recharacterize it, what you're saying in this instance is that it's really a contribution to capital. And if it's a contribution to capital, first of all, in bankruptcy, equity gets paid last if there is any equity left over…

But what you're saying more fundamentally is it's not debt. It is equity. It's an ownership interest in the debtor. That same argument could be made in state court even without other creditors present, because one defense to saying hey, you owe me a million dollars is to say no, when you look at the transaction as a whole, you made a contribution to the capital of the corporation, and it is equity in the corporation. I don't owe you anything. And if that recharacterization, if you want to call it that the proper understanding of the transaction was, becomes – the judgment, then goes to the defendant, no money is owed. And it is for that reason that I think Count I is barred by the prior litigation in the other cases.

It's also barred by collateral estoppel. The same facts would be found and having been found once to be a debt and not equity. I think when you apply the same facts you get to the same point, but I find it as res judicata. Alternatively, the same facts would be collateral estoppel.

Highland appealed the Bankruptcy Court's decision to the United States District Court for the Eastern District of Virginia (Alexandria Division). The District Court affirmed the decision of the Bankruptcy Court at <u>Highland Construction Management Services, LP v. Wells Fargo F/B/O Jerome Guyant IRA</u>, 2017 U.S. Dist. LEXIS 39848 (E. D. Va. March 20, 2017) (JA 563-578). This appeal followed.

## <u>STATEMENT OF FACTS</u>

Highland executed a Revolving Line of Credit Promissory Note in favor of

5

the Guyant IRA dated December 25, 2005, which was modified by allonges dated October 13, 2006, July 1, 2007, and November 1, 2008 (as modified, the "IRA Note")(JA 132-171). The IRA Note was secured by Highland's interest in various limited liability companies, **none** of which was Ashbury. (See Security Agreement and modifications, JA 142-154, and 168-171 (the "Security Agreement.")) The use of the funds advanced pursuant to the IRA Note was not limited in any way by the instruments, and certainly was not limited to use for Ashbury. The IRA Note was executed and guaranteed by Joseph L. Bane, Jr., ("Bane") the principal of Highland, and a primary member of the various limited liability companies in which Highland and/or Bane had a significant membership interests that were pledged to the Guyant IRA as security for the IRA Note.

By Judgment Order entered by the Circuit Court of Loudoun County on October 5, 2010 in <u>Wells Fargo Bank, N.A. f/b/o Jerome Guyant IRA v. Highland Construction Management Services, LP</u>, et al, Case No. 60287 (JA 350-353)(the "Judgment Order"), the Guyant IRA obtained judgment based on the IRA Note against Highland and Bane, jointly and severally, in the amount of One Million Eighty-Two Thousand Dollars ($1,082,000.00) in principal, accrued interest through May 1, 2010 of Eighty-Two Thousand Four Hundred Fifty-Three Dollars and Thirteen Cents ($82,453.13), attorneys' fees and costs in the amount of Forty-

Five Thousand Sixty-Eight Dollars and Six Cents ($45,068.06), and expert witness fees of Five Thousand Dollars ($5,000.00), with interest accruing on the principal balance at the rate of Six Hundred One Dollars and Eleven Cents ($601.11) per day. As of the date of the filing of Highland's Petition for Bankruptcy, the balance due, as calculated in accordance with the Judgment Order, was One Million Three Hundred Ninety-Six Thousand, Six Hundred Fifty-Seven Dollars and Fifty-Two Cents ($1,396,657.52), and the Guyant IRA filed a Proof of Claim in that amount. (JA 346-353). The Judgment Order also granted a declaratory judgment that the Guyant IRA had a perfected security interest in certain assets of Highland, other than Ashbury, to secure payment of the obligation represented by the judgment. (JA 35-38). The Complaint in that case appears at JA 120-172. The answer of Highland and Bane included among its affirmative defenses this: "8. Highland is entitled to a setoff and/or recoupment in connection with Plaintiffs purported purchase of a 42% interest in Ashbury Hillside LLC in an amount to be determined." (JA 173-181). This claim mirrors Count III of the Complaint in this proceeding. (JA 42-43).

In both Case No. 60287 and the subsequent case captioned <u>Highland Construction Management Services, L.P. v. Guyant</u>, Case No. CL61556, Judge Chamblin found that Highland and Guyant agreed that Highland would transfer to

Guyant a 42% interest held then by Highland in Ashbury, along with the associated tax benefits that derived from that interest; and that Guyant individually (and not the Guyant IRA) would, and did, lend Highland $400,000 and waive a loan fee to which he was entitled by agreement; that Guyant would apply proceeds he received based on the 42% Ashbury interest first as a credit to reduce Highland debt Highland owed to Guyant individually, then to reduce the debt Highland owed to the Guyant IRA under the IRA Note that is the subject of the judgment; that Guyant performed his obligations by so crediting to Highland's debts Ashbury proceeds received by Guyant from the sale of property owned by Ashbury ($176,400 on April 9, 2007) and the sale of tax credits due to Ashbury ($470,400 on October 7, 2007). (JA 218, l. 21 through 220, l. 16). The Guyant IRA's judgment against Highland as attached to Claim 4-1 reflects those reductions. (JA 346-353).

Throughout the litigation in Case No. 60287, Highland denied the existence of the agreement twice found to exist by the Judge Chamblin of the Loudoun County Circuit Court regarding the 42% Ashbury interest. Highland asserted, as it apparently attempts to do again in this case via the back door claim of recharacterization, that the $400,000 loan from Guyant was not a loan, but was a down payment for purchase of the 42% interest. (Verified Complaint, Case No.

8

61556, JA 237-238, ¶¶ 8-17.)   From this, Highland argued that the proceeds Guyant received from the Ashbury distributions should have been used to reduce the debt that Highland owed to the Guyant IRA, rather than first being applied to a loan that Guyant made personally to Highland.   Bane Answers to Interrogatories in Case No. 60287, No. 8, JA 186-187; Highland Answers to Interrogatories in Case No. 60287, No. 12, JA 196-197.  Defendants' Trial Exhibit 32a in Case No. 60287, (JA 201-202)**,** shows Highland and Bane claiming that the 42/45ths of the Ashbury proceeds should have been applied to the IRA note alone, because the $400,000 from Guyant was not a loan, but was a down payment on the purchase of the Ashbury 42% interest.

In Case No. 60287, The Circuit Court held a bench trial and rejected all of Highland's claims about the 42% agreement.  The court held that Guyant acquired the 42% interest in Ashbury as described above, in consideration of a $400,000 loan from Guyant individually, with waiver of the fee and an agreement to apply proceeds of the 42% interest first to repay the personal loan, then to pay down the IRA Note that was the subject of the suit:

> Considering what happened subsequent, and I'll fill this in a little bit more as we go along here, I find that in December 2006, Mr. Guyant and Mr. Bane reached an agreement that worked like this:
>
> Mr. Guyant recognized that he had agreed to buy this 42-percent interest in Ashbury Hillside from Highland.  I don't think Mr. Guyant at any time ever denied he signed this

9

assignment of interest, Defendant's Exhibit Number 9. And frankly, I don't see how he can deny signing it after he had received those two payments in 2007 -- which I'll discuss more about in a minute -- in 2007 from the sale of certain assets and interests of Ashbury Hillside.

Mr. Guyant was going to make a loan on his note, his personal note, his individual note to Highland for $400,000 as part of the consideration for purchasing the 42-percent interest in Ashbury Hillside.

Mr. Guyant agreed to waive the loan fee that was due on the individual or personal note and that he would carry it, and what I interpret that to mean not to call it or demand it, until there had been some sales of some assets of Ashbury Hillside and that -- when Mr. Guyant got some money from him. And that when the money did come in, that he would -- from Hillside, Ashbury Hillside, he would apply the money first to repay what was owed on the advance-- on the $400,000 advance on the $500,000 personal note with the balance that needed to be repaid or applied to the IRA note. And I'll submit to you that is what happened. That is what ultimately happened.

Circuit Court for Loudoun County (Chamblin, J.) Transcript 9/15/10, JA 213, l. 18 through JA 215, l. 5. The facts of the Ashbury transfer were decided more than six years ago.

While Case No. 60287 was pending, Highland filed, but did not serve, Highland Construction Management Services LP v. Jerome Guyant (Circuit Court for Loudoun County Case No. CL-61556). That Complaint appears at JA 236-243. There, Highland asserted in Count I that Guyant agreed to buy the 42% Ashbury interest for $1,737,345.00 and that the $400,000 from Guyant to

Highland was a partial payment rather than a loan from Guyant so that Guyant owed Highland $1,337,345. Alternatively, Highland asserted "Quantum Meruit/Unjust Enrichment" in Count II, claiming that Guyant was unjustly enriched to the tune of $2,225,217 so that after crediting $400,000, Guyant owed Highland $1,825,217. Among the unjust enrichments claimed by Highland in Case No. 61556 were the tax deductions available to Guyant as a result of the transfer (JA 239, ¶25). These, of course, are the same tax deductions that Highland is raising again in this proceeding. (Complaint ¶12, JA 35). That suit remained dormant until after the bankruptcy filings by Highland and Bane.

On March 24, 2011, Highland removed Circuit Court Case No. 61556 to the Bankruptcy Court as Adv. Proc. No. 11-01172-RGM. In his answer, Guyant asserted collateral estoppel and res judicata, based on the determination in Case No. 60287 that the $400,000 payment to Highland was an advance from the Personal Note. (Answer, ¶¶ 13-14, 16-17; Third Defense; JA 95-97). The Bankruptcy Court subsequently ordered that Highland's case against Guyant be remanded to the Circuit Court.

The case then went to a bench trial, again before Judge Chamblin, who had decided the first state court case, No. 60287. The Circuit Court ruled

against Highland on all counts, finding, again, that the agreement about the transfer of the 42% interest was as described above, that Guyant had fulfilled his obligations under the agreement by applying Ashbury proceeds first to the $400,000 owed by Highland to Guyant, with the balance credited against the amounts owed by Highland to the Guyant IRA. The Court denied the unjust enrichment claim as an attempt by Bane and Highland to change the terms of the deal:

> "And, Mr. Bane and Highland made a bad deal, so be it. I don't think it is the job of this Court to help him out and say... "oh, that is okay, Mr. Bane, I think it is kind of unfair that Mr. Guyant got the benefit of all this. You didn't get what it was worth." But that was the deal that was struck. That is what happened. It is what I said in the prior case, so therefore Judgment for the Defendant, Mr. Guyant, in this case.

Court's Ruling, June 28, 2012, Tr. p. 11, lines 3-11 (JA 257).

Highland filed a Motion for Reconsideration and a Motion for New Trial. On March 25, 2013, the Circuit Court denied Highland's motions, reaffirming that the contract was as Guyant testified and as the Circuit Court had determined in the first suit:

> The way I look at it is Highland has sued Mr. Guyant saying, you owe me 1.7, whatever it is, million dollars under this assignment. Well no for, [sic] it was decided in the prior case and it also gets bored [sic] out in this case. This was an agreement that allowed Mr. Bayne [sic] and Highland Construction to get that $400,000 that he needed and in return for that, and without having to pay the loan fee, and in return for that Highland assigned 42 percent of Ashbury Hillside to Mr. Guyant and Mr. Guyant agreed that he

12

would upon sale of any asset or anything to do with, or any I guess an asset of the LLC Ashbury Hillside, that he'd pay 42/45ths of it back to Highland.

Court's Ruling, March 25, 2013, p.12, lines 5-18 (JA 270).

Highland filed a notice of appeal to the Virginia Supreme Court on April 26, 2013.  In its Petition for Appeal (JA 285-314), it made the same argument it made to the Circuit Court, and is attempting to make again in this case, clothed as recharacterization: that the transaction involved equity in Ashbury, and not debt under the Personal Note and the IRA Note.    The Supreme Court of Virginia rejected the Petition, rendering the Circuit Court decision final.  (JA 315-316).

In summary, the Circuit Court of Loudoun County decided, at the first trial, the second trial and in the reconsideration phase, that Highland and Guyant had agreed that Highland would transfer the 42% Ashbury interest and any related tax benefits to Guyant; Guyant personally agreed to loan Highland $400,000 and waive a loan fee to which he was otherwise entitled; and the proceeds to be realized from the 42% Ashbury interest would be applied first to pay back Highland's  debt to Guyant, and then to pay back Highland's debt to the Guyant IRA.  There was no agreement to pay $1,737,345, no agreement to pay the tax basis which Highland transferred to Guyant and no basis on which to impose any additional obligations on Guyant.   The advances by Guyant personally, and by the Guyant IRA, were not for equity in Ashbury, but loans from Guyant and the

13

Guyant IRA. Highland's claims in this case are the sixth direct attempt to litigate issues arising from the same transaction, including the character and status of the funds advanced to Highland, and its claims are barred by claim preclusion.

But beyond the state court litigation, Highland has filed repeated attacks in the Bankruptcy Court against the Guyant IRA and the secured debt owed by Highland as embodied in the Judgment, arising from the transaction and core set of facts, the IRA Note and the Security Agreement. In any one of these attacks, Highland could have and should have brought to the Court the issues it attempts to bring in this adversary proceeding initially filed four years into the bankruptcy proceeding that is now more than seven (7) years old.[3]

First, Highland objected to the Guyant IRA Claim 4-1 (the "Claims Objection") claiming that the judgment debt was unsecured despite the financing statements and despite the Circuit Court of Loudoun County's declaratory judgment affirming that the security interests were perfected. After lengthy proceedings, this Court confirmed the secured status of the debt, which was affirmed by the District Court ((USDC EDVA 1:13-cv-1244 Doc 18

---

[3] It is significant to Mr. Guyant and to the Guyant IRA that during the pendency of the attacks on the transaction, through the present, no payments to the Guyant IRA have been made in respect of the secured claim, while the assets of the Highland estate is being depleted to pay for the pursuit of those repeated and baseless attacks.

14

2/21/14 (JA 317-319), and by this Court in <u>In re Highland Construction</u> <u>Management Services, LP v. Wells Fargo Bank, NA for the use and benefit of</u> <u>Jerome Guyant IRA</u>, 53 Fed. Appx. 217 (4th Cir. 2014)(JA 320-321).

Next, in <u>Highland Construction Management Services, LP v. Wells</u> <u>Fargo Bank NA f/b/o Jerome Guyant IRA</u>, Adv. Proc. 13-1055 (the "Insider Preference Suit"), Highland attacked the Guyant IRA's receipt of the proceeds of a pretrial attachment in the Loudoun County Circuit Court in payment of the same loan that Highland seeks to recharacterize in this adversary proceeding. Highland owned a total of 32% of Sanford LLC, a limited liability company that owned various parcels. Highland pledged 50% of its interest in Sanford, along with other collateral, as security for the obligations under the IRA Note now embodied in the Judgment. When Sanford sold a parcel of land in 2009, Highland refused to honor the security interest and refused to pay the proceeds to the Guyant IRA. The Loudoun County Circuit Court ordered a pretrial attachment of the proceeds. The Sanford proceeds were paid to the Guyant IRA pursuant to a court order which Highland endorsed.

In the Insider Preference Suit, Highland challenged that payment as a preference, asserting that mere membership in some of the same LLC's made the Guyant IRA an insider of Highland. The Complaint appears at JA 4-10. The Guyant IRA moved for summary judgment and Highland finally agreed to

dismiss the action with prejudice.  The Court so ordered.  (13-ap-1055, Order dated 6/24/14; JA 30-31).  Highland did not raise the recharacterization or equitable subordination theories in its Complaint, nor at any other point in that adversary proceeding, although the facts that Highland now claims  support those theories existed at the time of the filing of the Complaint.  (JA 4-10),

Next, in Highland  Construction Management Services,  LP v Wells Fargo Bank N.A. fbo Jerome Guyant IRA, Adv. Proc. 13-1289-RGM, (the "Misnomer Suit")[4] Highland challenged the Guyant IRA's status as a secured creditor with respect to the obligation under the IRA Note, asserting that the wording of a financing statement did not create a valid security interest.   The Guyant IRA moved for judgment on the pleadings on the principal basis of *res judicata.*  (JA 11-29).

The Bankruptcy Court entered judgment on the pleadings against Highland, resting its decision on the fact that Highland had the opportunity to litigate those issues in Case No. 60287 in Loudoun County, (JA 486-487), and later denied Highland's request for reconsideration (JA 485-486).  Highland did not raise the theories of recharacterization or equitable subordination at any point in these proceedings which arose from the same transaction and core set of facts at issue

---

[4] The Complaint in that Adversary Proceeding appears at JA 342-357.

in this proceeding.  This adversary proceeding was not based on any new facts that arose subsequent to the filing of the Misnomer Suit.

At no point in the various proceedings before the Bankruptcy Court (the Claims Objection, the Insider Preference Suit, or the Misnomer Suit), all of which arose from the same transaction and core of facts that gave rise to the claims on the Note and Security Interest embodied in the Judgment, and the claims relating to the Guyant IRA's acquisition of the 42% interest in Ashbury, did Highland raise theories of "recharacterization" or equitable subordination.

## ARGUMENT

I.    **Highland's Claim For Recharacterization Of Debt As Equity Is Barred By The Doctrines Of Res Judicata And Collateral Estoppel Where There Have Been Two (2) Prior State Court Proceedings, And Three (3) Prior Bankruptcy Court Proceedings Arising From The Same Transaction And Core Set Of Facts, All Of Which Have Been Fully and Finally Resolved Against Highland.**

Under Virginia law, the doctrine of *res judicata*, or claim preclusion, "poses one simple question: Has the debtor previously had an opportunity to make the claims she asserts in this forum and obtain an adjudication?"   In re Sawyer, 2008 Bankr. Lexis 2065, *7 (Bankr. E.D. Va. 2008); Davis v. Marshall Homes, Inc., 265 Va. 159, 164, 576 S.E.2d 504 (2003).  A bankruptcy

court attempting to answer this question "must apply the preclusion law of the state in which the judgment was rendered." In re Professional Coatings Inc., 210 B.R. 66, 74 (Bankr. E.D. Va. 1997) (*citing* Migra v. Warren City School Dist. Bd. Of Educ., 465 U.S. 75, 81-85 (1984) ("a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). The modern Virginia standard for *res judicata* is as follows:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from the same conduct, transaction, or occurrence, ***whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought***. (emphasis supplied)

Va. Sup. Ct. R. 1:6. *See also* Raley v. Haider, 286 Va. 164, 170, 747 S.E.2d 812 (2013)("In the Commonwealth, Rule 1:6 governs the doctrine of res judicata."); Seale & Assocs. v. Vector Aero Corp., 2010 U.S. Dist. LEXIS 129748, *9 (E.D. Va. 2010) (under Rule 1:6, "Res judicata bars a second cause of action that arises from the same conduct, transaction, or occurrence on which a prior final judgment was issued, regardless of whether the party raised the

second action's legal theory in the first action.").

This same formulation is applied by the Bankruptcy Courts. <u>Decker v.</u>
<u>Wash. Mut. Bank, N.A. (In re Decker)</u>, 357 B.R. 825, 833-834 (Bankr. D.
Mont. 2007). As stated by Collier:

> A theory of liability that never has been litigated can become precluded by operation of the "General Rule Concerning 'splitting.'" The dimensions of a "claim" are determined under a pragmatic transactional test that focuses upon a common nucleus of operative facts. If the theory of liability or form of relief was not, but could have been sought in the first action, then the merger and bar doctrines operate to extinguish them…
>
> In bankruptcy cases, the claim preclusion doctrine generally applies. As to judgments rendered before bankruptcy, the bankruptcy courts have some latitude in applying preclusion. But judgments rendered by a bankruptcy court are a different matter. The nature of particular bankruptcy proceedings may affect the pragmatic analysis of the dimensions of a claim in light of the role of the concept of the convenient trial unit. The exception to splitting based on limitations on the jurisdiction of the court may also loom large in light of constraints on the power of bankruptcy judges in various circumstances. **Nevertheless, a valid judgment rendered by a bankruptcy court in an adversary proceeding ordinarily will be given the preclusive effect that is afforded federal judgments generally, which entails applying the doctrines of merger and bar as viewed through the prism of the dimensions of a claim and the rule concerning splitting.** (emphasis supplied).

10-7018 Collier on Bankruptcy (Sixteenth Edition) P 7018.01.

Under the doctrine of collateral estoppel, or issue preclusion, a party may
not relitigate questions, rights, and facts actually or necessarily decided in prior
litigation involving the same issues, but which asserted a different cause of

action.  Rawlings v. Lopez, 267 Va. 4, 591 S.E.2d 691 (2004).  Generally, it is not necessary that all the parties to the initial and the second proceedings be the same, as long as the party to be estopped had a "full and fair opportunity" to litigate in the first proceeding the issue for which preclusion is sought.  State Farm Mut. Automobile Ins. Co. v. Wright, 173 Va. 261, 3 S.E.2d 187 (1939).  Here, Highland pled, and Judge Mayer determined, that "there is an identity of interest between the IRA and Guyant."[5]

All of the prior litigation outlined in this Brief (the two Loudoun County Suits, the Claim Objection, the Insider Preference Suit, and the Misnomer Suit), arose from the same core set of facts and same security agreement and financing statement that are at issue in this adversary proceeding.  All resulted in final adjudications in favor the Guyant IRA, so claims not pled are subject to the preclusion.

Both Judge Mayer and Judge Brinkema decided this case based on the Loudoun County suits and did not rely on the prior adjudications in the Bankruptcy Court proceedings.  But as is clear, those cases arose from the same transaction and the same nucleus of facts, and the preclusive effect of the adversary proceedings, including the Insider Preference Suit and the Misnomer

_____

[5] See quotation from Judge Mayer on page 4, supra, and footnote 2 on that same page.

Suit, was raised in the summary judgment proceedings in the Bankruptcy and District Courts below.  (JA 115-116; 507-511).  This Court is not limited to evaluation of the grounds offered by the Bankruptcy Court and the District Court to support their decisions, but may affirm on any ground apparent from the record.    Kimble v. Rajpal, 566 Fed. Appx. 261, 263, 2014 U.S. App. LEXIS 7232 **5 (4th Cir., April 17, 2014), (*citing* Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006); Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008) (*citing* United States v. Smith, 395 F.3d 516, 518-19 (4th Cir. 2005).

**II.    The Equitable Doctrine Of Recharacterization Is Nowhere Found In The Bankruptcy Code, And Is Not Peculiarly a Bankruptcy Cause of Action.  It is an Equitable Claim That Has Been Recognized by the Virginia Court of Appeals, As Well as Other State and Federal Courts in Non-Bankruptcy Contexts.**

The thrust of Highland's argument on this issue appears to be that although the recharacterization claim raised in this action arose from the same transaction and core set of facts as the two (2) Loudoun County cases, it is peculiarly a bankruptcy cause of action that can only be brought in a bankruptcy court.  This is a curious argument because a claim for recharacterization is not based upon any particular provision of the Bankruptcy Code, but rather is a common law equitable concept that was determined to be "within the broad powers afforded a bankruptcy court in 11 U.S.C. §105." .  In Re Dornier Aviation (North America), Incorporated,

453 F. 3d 225, 231 (4ᵗʰ Cir. 2006). There is no question but that equitable claims and defenses can be raised in actions at law filed in Virginia state courts. Va. Code § 8.01-422.

Highland argued below that it was not clear whether Virginia recognized a cause of action for recharacterization. (JA 377-279). The District Court noted (JA 575) that contrary to Highland's assertion, the Virginia Court of Appeals recognized such a cause of action in <u>Bosserman v. Bosserman</u>, 9 Va. App. 1, 384 S.E. 2d 104, 110 (Va. Ct. App. 1989).

<u>Bosserman</u> involved equitable distribution in a divorce case which required valuation of Mr. Bosserman's interest in a closely held corporation. Mr. Bosserman argued that the trial court should consider a $16,000 debt from the corporation to its shareholders that was reflected on the books of the corporation in valuing the corporation for purposes of equitable distribution. According to the opinion of the Virginia Court of Appeals, "[t]he trial court determined that the $16,000 was a contribution to capitalize the corporation and was not a debt." 9 Va. App., at 18, 384 S.E.2d, at 110. On appeal, Mr. Bosserman argued that this was error. The Virginia Court of Appeals affirmed the trial court's decision stating "[n]evertheless evidence was sufficient to support the finding of the trial court that the alleged debt was, in fact, capitalization of the corporation." <u>Id</u>.

In this Court, Highland attempts to minimize the significance of <u>Bosserman</u>

by selectively quoting from the Court's decision. On page 21 of its Brief, Highland quotes from Bosserman, but cuts off the quotation just before the sentence quoted above that appears as the very next text in the very same paragraph quoted by Highland.[6] It is thus clear that the Virginia Court of Appeals has recognized the recharacterization cause of action.

This is consistent with the findings of many other non bankruptcy courts that have considered the issue. TIFD III-E, Inc. v. United States, 459 F.3d 220, 232-233 (2nd Cir. 2006); Estate of Mixon v. United States, 464 F.2d 394, 401-403 (5th Cir. 1972)(the issue in this tax case focused on the fact that debt allows money to be taken out of a company without tax incidents; equity requires treatment as dividends to the shareholder, with no deduction to the entity); Dealer Servs. Corp. v. Am. Auto Auction, 2013 Conn. Super. LEXIS 1103 **35-41 (recognizes recharacterization, quoting extensively from Idaho Development v. Teton View Golf Est., 152 Idaho 401, 272 P. 3d 373 (2011)); Idaho Development v. Teton View Golf Est., supra (focuses on intent of the parties to determine whether funds should be treated as debt or equity); Yankee Microwave, Inc. v. Petricca Communications Sys., 53 Mass. App. Ct. 497, 522-523, 760 N.E.2d 739 (2002) (entity was undercapitalized; loans were recharacterized as equity); Tanzi v.

---

[6] "Nevertheless, the evidence was sufficient to support the finding of the trial court that the alleged debt was, in fact, capitalization of the corporation." Bosserman, 9 Va. App., at 18, 384 S.E. 2d, at 110, 384 S.E.2d, at 110.

Fiberglass Swimming Pools, 414 A.2d 484, 489-490 (R.I. 1980)(recharacterization recognized; court noted that issue often arises in bankruptcy and tax cases); Interthem v. Olympic Homes Systems, Inc., 569 S.W.2d 467, 471-474 (Tenn. Ct. App. 1978) (recognized the equitable power of courts to recharacterize debt as equity where an entity is undercapitalized and loan is not arms length or in good faith); In re Mader's Store for Men, Inc., 77 Wis. 2d 578, 604-606, 254 N.W.2d 171 (Wis. 1977)(subordination of debt recognized where claim is in reality a proprietary interest seeking to compete on an equal basis with true creditors' claims).

> **III.    Even Assuming That Recharacterization Were Peculiarly A Bankruptcy Cause Of Action, The Claim For Recharacterization Made In This Adversary Proceeding Case Is Barred By The Doctrine Of Res Judicata Where It Was Not Raised In Three (3) Prior Bankruptcy Proceedings, Including Two (2) Adversary Proceedings, All Of Which Arose From The Same Transaction And Core Set Of Facts, And All Of Which Were Fully And Finally Resolved In Favor Of The Guyant IRA.  There Is No Reason or Basis for Certifying the Question to the Virginia Supreme Court Because The Issue of Whether Virginia Recognizes a State Law Cause of Action For Recharacterizaion is Moot.**

While Judges Mayer's and Brimkema's decisions below were based solely on the decisions in the two (2) state court proceedings, there were three (3) separate proceedings in the Bankruptcy Court that arose from the same transaction

24

and core set of facts which gave rise to this Adversary Proceeding: the Claim Objection[7], the Preference Suit, and the Misnomer Suit.  All resulted in final judgments in favor of the Guyant IRA.  (JA 057-276; JA 277-290).  If recharacterization were a unique bankruptcy cause of action, the doctrine of claim preclusion required it to have been brought in those prior adversary proceedings.  See  Decker v. Wash. Mut. Bank, N.A. (In re Decker), 357 B.R. 825 (Bankr. D. Mont. 2007), and 10-7018 Collier on Bankruptcy (Sixteenth Edition) P 7018.01, quoted extensively above.

Accordingly, whether recharacterization is a viable cause of action under Virginia state law as Judges Mayer and Brinkema stated it to be, and as recognized

---

[7] While an objection to a claim typically need not be done through an adversary proceeding, where, as in the Claim Objection which was the subject of this Court's decision in In re: Highland Construction Management Services, LP v. Wells Fargo Bank, NA for the use and benefit of Jerome Guyant IRA, 53 Fed. Appx. 217 (2014) **Error! Bookmark not defined.** (JA 320-321)  filed in the Bankruptcy Proceeding below, the objection to a claim is joined with a demand for the kind of relief set out in Rule 7001(2) [a proceeding to determine the validity, priority or extent of a lien or other interest in property], the relief is properly sought through an adversary proceeding.  Fed R. Bankr. P. 3007;  Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995);  In re Arthur's Indus. Maintenance, 1992 Bankr. LEXIS 2339 (Bankr. W.D. Va. 1992).  As noted in the quotation from Collier in Section I of this Argument, decisions by Bankruptcy Courts in adversary proceedings ordinarily will be given preclusive effect.  Adversary Proceedings are defined in Fed. R. Bankr. P. 7001, and are governed substantially by the Federal Rules of Civil Procedure.  As stated in the Notes of the Advisory Committee on Rules: "These Part VII rules are based on the premise that to the extent possible practice before the bankruptcy courts and the district courts should be the same. These rules either incorporate or are adaptations of most of the Federal Rules of Civil Procedure."

by the Virginia Court of Appeals in <u>Bosserman</u>, and by other non-bankruptcy <u>courts</u>, it is unquestionably a viable cause of action under bankruptcy law, and it is clear that it could have and was required to have been raised in the Claims Objection and the two (2) prior adversary proceedings.  It was not, and Highland is precluded from raising it here. Accordingly, there is neither a reason nor a basis for this Court to certify the question to the Virginia Supreme Court.  Indeed, the issue is rendered moot by the res judicata effect of the two (2) state court cases and three (3) bankruptcy court proceedings.  *See, e.g.*, <u>Townes v. Jarvis</u>, 577 F.3d 543, 544-545 (4th Cir. 2009)(a case is rendered moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, or when the claim is not redressable).  Here, Highland not only failed to raise the claim for recharacterization in the two (2) prior state court proceedings, it failed to raise it in the three (3) prior bankruptcy court proceedings, and its failure to do so renders those claims <u>res judicata</u>.  Even if the Supreme Court were to find, contrary to Bosserman, that there was no state law cause of action in Virginia for recharacterization, Highland would be barred by the doctrine of claim preclusion from raising those issues in this case because it was required to have done so in the prior bankruptcy cases, and did not.   Those cases arose from the same transaction and core set of facts as this adversary proceeding, and all were fully and finally resolved in favor of the Guyant IRA.

26

## CONCLUSION

The matters raised in this proceeding arise from a transaction and core set of facts that prior to the institution of this adversary proceeding have been litigated twice in the state court, and three times in the bankruptcy court,. The claims raised are barred by claim preclusion (res judicata) and issue preclusion (collateral estoppel), as determined by the bankruptcy court and the District Court in thorough and thoughtful opinions. It is long past time for the successive, repetitive, and expensive litigation over this transaction to cease. The decision of the District Court should be affirmed.

Dated: July 5, 2017               Respectfully submitted,

/s/ Neil D. Goldman
Neil D. Goldman (VSB No. 18352)
Goldman & Van Beek, P.C.
510 King St., Suite 416
Alexandria, Virginia 22314
Voice:     (703) 684-3260
Facsimile:  (703) 584-4742
ngoldman@goldmanvanbeek.com

Counsel for Wells Fargo Bank, N.A.,
f/b/o Jerome Guyant IRA

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all persons who have registered to receive

electronic notice.  In addition, I sent a true copy of the foregoing via first class mail, postage prepaid, to:

James P. Campbell, Esq.
Campbell Flannery, P.C.
1602 Village Market Boulevard, Suite 220
Leesburg, VA 20175

Christopher L. Rogan, Esq.
RoganMillerZimmerman
50 Catoctin Circle, Suite 333
Leesburg, VA 20176

<u>/s/ Neil D. Goldman</u>

28

## CERTIFICATE OF BAR MEMBERSHIP

I certify that I am a member of the Bar of the United States Court of Appeals for the Forth Circuit.

(s)    s/ Neil D. Goldman

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains six thousand seven hundred and eighty-four (6,784) words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in fourteen-point Times New Roman.

(s)    s/ Neil D. Goldman

## CERTIFICATE OF IDENTICALNESS

I hereby certify that the E-Brief and the text of the hard-copy brief are identical.

(s)    s/ Neil D. Goldman

## CERTIFICATE OF VIRUS SCAN

I hereby certify that I have caused to be performed a virus scan on the E-Brief using Malwarebytes, and no viruses were found.

(s)    s/ Neil D. Goldman